IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAPITOL RADIOLOGY, LLC                      :

                                               :

    v.                               : Civil Action No. DKC 2005-3298

                                                 :

DIMENSIONS HEALTH CORP.                     :

                                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this racial discrimination case brought under 42 U.S.C. § 1981 are: (1) Plaintiff's motion for extension of time to complete discovery (paper 19); (2) Defendant's motion for summary judgment (paper 20); (3) Plaintiff's motion to amend/correct responses to requests for admissions (paper 23); (4) Plaintiff's motion for relief pursuant to Fed.R.Civ.P. 56(f) (paper 26); (5) Defendant's motion to strike Plaintiff's reply to Defendant's response to paper 23 (paper 35); and (6) Plaintiff's motion to supplement its opposition to Defendant's motion for summary judgment and its motion for relief (paper 37).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will deny Plaintiff's motions for extension of time to complete discovery, for relief pursuant to Rule 56(f), and to supplement.  The court will grant Defendant's motion for summary judgment, and will deny as moot the remaining motions.

## I. Background

Plaintiff Capitol Radiology, LLC filed a complaint against Defendant Dimensions Health Corporation (Dimensions) on December 9, 2005, alleging violations of the Federal Civil Rights Act of 1866, 42 U.S.C. § 1981. Capitol Radiology is a closely held limited liability corporation whose only two principals are African-American. It provides professional radiology services. Dimensions operates as Laurel Regional Hospital (the Hospital), in Laurel, Maryland, a full-service medical facility that offers radiology services. Plaintiff contends that Defendant acted in a racially discriminatory manner when it failed to award Plaintiff a contract to provide outpatient MRI (magnetic resonance imaging) services at the Hospital. (Paper 20, Ex. A, Thomas dep. at 68.)[1]

Doctor Doriann Thomas, an African-American female and chief executive officer of Capitol Radiology, was a member of WB&A Imaging, a physician group that provided inpatient and outpatient MRI services to the Hospital from 2002 to 2005. The group dissolved for financial reasons in January 2005, at which point Dr. Thomas formed Capitol Radiology. Dr. Thomas learned that the Hospital was using a competitive bid process to replace its former

---

[1] Plaintiff's complaint very generally alleges that Plaintiff was denied the opportunity to bid on a contract for radiology services and that the contract was awarded to another company, outside Plaintiff's protected class. (Paper 1, at ¶¶ 9 and 11.) During discovery and in the motion papers, Plaintiff's claim developed into one concerning outpatient MRI services.

contract with WB&A Imaging.   Plaintiff submitted a request for
proposal and was awarded a radiology services contract in mid-
January 2005, signed in March 2005 ("radiology contract").
Plaintiff does not allege that it suffered "any impermissible or
illegal discrimination" when it was granted this contract. (Paper
20, Ex. A, Thomas dep. at 59.)   To date, Capitol Radiology still
provides radiology services for the Hospital.   The radiology
contract states that Capitol Radiology will be responsible for
providing inpatient MRI services; it does not address the provision
of outpatient MRI services.   Pursuant to the radiology contract,
Dr. Thomas was named Medical Director of Radiology.   As Medical
Director, Dr. Thomas served as the representative for Capitol
Radiology and had the authority to act for and bind Capitol
Radiology in all clinical matters relating to the radiology
contract.  (Paper 20, Ex. B at 2.)

In April 2005, Plaintiff approached Yolanda Copeland, the
contract administrator for the radiology contract, to express
interest in continuing to perform both inpatient and outpatient MRI
services for the Hospital.  (Paper 20, Ex. A, Thomas dep. at 92.)
Copeland referred Plaintiff to Laurel Hospital President, Doug
Shepard, who took over Copeland's responsibilities with regard to
the provision of MRI services.

Throughout the summer of 2005, Dr. Thomas verbally requested
information and documents relating to the costs of MRI services.

Despite not receiving such documents from either Shepard or Carol Cawthorne, executive director of ancillary services, Plaintiff submitted a technical proposal to Shepard and Cawthorne for the provision of MRI services for the hospital.

Dr. Thomas testified that at every opportunity for discussion, Shepard and Cawthorne shared with her that price was an important consideration in the award of the contract.   (Paper 20, Ex. A, Thomas dep. at 102.)   In October 2005, Shepard informed Plaintiff that the Hospital would enter into a contract for the provision of outpatient MRI services with Alliance Imaging rather than Capitol Radiology.   Dr. Thomas testified that Shepard attributed the decision for choosing Alliance Imaging to financial considerations:

> Q: Did Doug Shepard express at any point in your meeting with him why the decision was made to go with Alliance?
> A: Based upon, I guess, low cost.
> Q: Any other rationalization provided to you?
> A: Lower cost.

(Paper 20, Ex. A, Thomas dep. at 108.)

Plaintiff instituted the present action on December 9, 2005, stating that it "was denied and/or not offered an opportunity to submit a proposal and/or contract bid to Defendant for radiology services [and] . . . was constructively denied the  opportunity to submit a proposal and/or contract bid" because Plaintiff is an African American owned corporation.   (Paper 1.)

The following is a list of the pending motions and the date each motion was filed:

4

- May 15: Plaintiff filed a motion for extension of time to complete discovery. (Paper 19.)
- May 15: Defendant filed a motion for summary judgment. (Paper 20.)
- June 1: Plaintiff filed a motion to amend/correct its responses to Defendant's requests for admissions. (Paper 23.)
- June 2: Plaintiff filed a motion to amend/correct its motion for relief pursuant to Fed.R.Civ.P. 56(f). (Paper 26.)
- July 13: Defendant filed a motion to strike an affidavit contained in Plaintiff's reply filed on June 30. (Paper 35.)
- August 4: Plaintiff filed a motion for leave to file a supplement to its opposition to Defendant's motion for summary judgment and Plaintiff's motion for relief. (Paper 37.)

## II. Discovery Motions

### A. Extension of Time to Complete Discovery

This court issued a scheduling order on January 17, 2006 providing that discovery would close June 1, 2006.  Only two weeks prior to the expiration of discovery, Plaintiff sought to extend the discovery period by 60 days.  (Paper 19.)  A scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]"  Fed.R.Civ.P. 16(b).  Indeed, the scheduling order issued on January 17 specifically provided that it "will not be changed except for good cause."  (Paper 10.)

The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant.  Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard."  *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2000).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification.  *If that party was not diligent, the inquiry should end.*" *Marcum v.*

5

*Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995) (emphasis in original). Plaintiff has consistently shown a lack of diligence in pursuing discovery and therefore has not shown good cause for an extension of time to complete discovery.

On January 20, Defendant served Plaintiff with a request for production of documents. A response was due February 22 and Plaintiff failed to meet the deadline. (Paper 28 at 3.) On February 2, Defendant served a first set of interrogatories on Plaintiff, which was due March 7. Again Plaintiff failed to respond in a timely manner. (*Id.*) On February 22, Plaintiff filed a motion to extend discovery responses by 14 days (paper 16), which this court granted (paper 18). Plaintiff failed to meet either self-imposed deadline contained in its motion. On March 15, Defendant served Plaintiff with requests for admissions, the answers to which were due on April 17. Plaintiff wholly failed to respond to this request until June 1 when it filed a motion with this court to "amend/correct" its responses to Defendant's requests for admissions (paper 23), despite the fact that it never filed any responses which could be amended or corrected.

On March 16, Plaintiff informally requested Defendant to extend the deadline for document production and answers to interrogatories, Defendant agreed, but Plaintiff again failed to produce discovery by its self-imposed deadlines. Plaintiff did not produce documents until April 12 or answer interrogatories until

April 24, approximately eleven and one-half weeks after Defendant's requests.

    Although Plaintiff's counsel suffered a medical emergency on March 26 which required him to be out of work for three weeks, he was not diligent in seeking discovery up to that point.  To date, Plaintiff has not served any interrogatories, requests for production, or requests for admissions of facts on Defendant. Plaintiff's counsel waited until May 3, fifteen weeks after the start of discovery, to serve Defendant with its one and only deposition notice stating its intent to depose a hospital administrator on May 18.  On May 15, Plaintiff asked Defendant to postpone the deposition until May 19.   Defendant agreed and Plaintiff deposed Cawthorne and Doctor Lynne A. Gaynes on May 19, a mere 12 days before the scheduled close of discovery. *See, e.g., Lyles v. Alamo Rent-A-Car, Inc.,* 2000 WL 1744934 (D.Md. 2000) (denying an extension of time when counsel waited until 18 days before the cut-off of discovery to depose a witness).

    Plaintiff now seeks a 60 day extension of time for discovery because the deposition of Cawthorne, taken on May 19, "alludes to additional persons whose evidence as witnesses will support Plaintiff's allegations of discrimination and rebut any articulated non-discriminatory reason given by Defendant for Plaintiff's treatment." (Paper 22 at 2.)  Specifically, Plaintiff wishes to depose Shepard, Gary Fick of Alliance Imaging, and an unidentified

7

Alliance Imaging officer.[2] (Paper 22 at 2.)  The identification of these potential witnesses cannot constitute "good cause" because, as Plaintiff admits, "Dr. Dorianne [sic] Thomas identified these same persons . . . as having discoverable information in *her* deposition" taken on February 23.  (Paper 22 at 2) (emphasis in original).   If Plaintiff was aware in February that these individuals potentially had discoverable information, counsel should have arranged to depose them prior to the end of the discovery period.

Plaintiff's counsel has shown a consistent carelessness and lack of diligence throughout the discovery period.   Plaintiff cannot meet the "good cause" standard required to modify the court's scheduling order and therefore its motion for extension of time to complete discovery will be denied.

**B.   Relief Pursuant to Rule 56(f)**

Plaintiff also moves, pursuant to Fed.R.Civ.P. 56(f), that the court deny Defendant's motion for summary judgment, or in the alternative, order a continuance to allow Plaintiff to depose the aforementioned three witnesses.  (Paper 26.)

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the

---

[2] In its motion for relief pursuant to Fed.R.Civ.P. 56(f) Plaintiff later identifies "Ms. Capriccio" as the third witness it seeks to depose.  (Paper 26.)

> application for judgment or may order a
> continuance to permit affidavits to be
> obtained or depositions to be taken or
> discovery to be had or may make such other
> order as is just.

Fed.R.Civ.P. 56(f).

In reviewing a motion based on Rule 56(f), the United States Court of Appeals for the Fourth Circuit noted that "the nonmoving party's duty to respond specifically to a summary judgment motion is expressly qualified by Rule 56(f)'s requirement that summary judgment be refused where the non-moving party has not had the opportunity to 'discover information that is essential to his opposition.'" *Strag v. Bd. of Trustees, Craven Comm. College*, 55 F.3d 943, 953 (4th Cir. 1995) (internal quotations omitted). As discussed above, Plaintiff had ample opportunity to depose Shepard and Fick, as Plaintiff was aware in February that these individuals potentially had discoverable information. As to the third witness, Ms. Capriccio, not only does Plaintiff fail to identify her by full name and title, it also fails to demonstrate that she has specific information that is essential to its opposition. Accordingly, Plaintiff's motion for relief pursuant to Rule 56(f) will be denied.

### C. Leave to Supplement

Plaintiff further filed a motion for leave to supplement its opposition to Defendant's motion for summary judgment and/or Plaintiff's motion for relief pursuant to Rule 56(f). (Paper 37.)

In its motion, Plaintiff submits excerpts from Alliance Imaging's website, dated 2003, that it contends raise issues of material fact and "demonstrate its need to conduct discovery to obtain admissible evidence[.]" (Paper 40.) Plaintiff states that its sole purpose for filing this motion is to allow Plaintiff "to depose relevant persons identified by Defendant's representatives[.]" (Paper 40 at 2.)

The standard used by a district court in ruling on a motion to supplement is that "leave should be freely granted, and should be denied only where good reason exists . . ., such as prejudice to the defendants." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (internal quotations omitted). Plaintiff attempts to manipulate judicial procedures by labeling what is, in essence, a motion to extend discovery as a motion for leave to supplement its oppositions, thus the liberal standard articulated by the *Franks* court should not apply. Plaintiff's motion to supplement is duplicative of its motion to extend discovery and will therefore be denied.

**D. Other motions.**

Plaintiff's motion to amend/correct responses to requests for admissions and Defendant's motion to strike Plaintiff's reply to Defendant's response to paper 23 need not be resolved, and will be denied as moot. Defendant's motion for summary judgment will be granted without consideration of Plaintiff's admissions.

III.   **Summary Judgment Motion**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential

11

element . . . necessarily renders all other facts immaterial."
*Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the
nonmoving party will have the burden of proof, it is his or her
responsibility to confront the motion for summary judgment with an
affidavit or other similar evidence in order to show the existence
of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256;
*Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of
evidence in support of the nonmovant's position will not defeat a
motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d
529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must
be "sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party. If the evidence is merely
colorable, or is not significantly probative, summary judgment may
be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Plaintiff's claim is based on 42 U.S.C. § 1981.  Section 1981,
in pertinent part, states:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and enforce
> contracts, . . . as is enjoyed by white
> citizens . . . .
> (b) . . . the term "make and enforce
> contracts" includes the making, performance,
> modification, and termination of contracts,
> and the enjoyment of all benefits, privileges,
> terms, and conditions of the contractual
> relationship.

There are two methods for proving intentional discrimination
in employment: (1) through direct or indirect evidence of
intentional discrimination, or (2) through circumstantial evidence

under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[3]   For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002).   In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal quotation omitted).   More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (internal quotation omitted).   If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*.   *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination.   *See McDonnell Douglas Corp.*, 411 U.S. at 802.   Once a plaintiff establishes a

---

[3] Although this framework, first set forth in *McDonnell Douglas*, originally involved employment discrimination claims under Title VII, the United States Supreme Court has held that the burden-shifting scheme is equally applicable to § 1981 claims.   *See Patterson v. McLean Credit Union*. 491 U.S. 164, 185-87 (1989); *Hawkins v. PepsiCo Inc.*, 203 F.3d 274, 278 (4th Cir. 2000).

*prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff offers no direct or indirect evidence that Defendant intended to discriminate on the basis of race, and therefore must attempt to prove its cause of action under the *McDonnell Douglas* burden shifting framework.[4]

---

[4] A preliminary question is whether Plaintiff, as a corporate entity, has standing to sue under § 1981. In *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 562 (1977), the Supreme Court stated, in dicta, that "a corporation . . . has no racial identity and cannot be the direct target of . . . alleged discrimination." Since *Arlington Heights*, however, several courts have held that a corporation may have standing to allege
(continued...)

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of discrimination. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). In order to prove a *prima facie* case, Plaintiff must show that (1) it belongs to a racial minority; (2) it was qualified to provide outpatient MRI services; (3) despite its qualifications and performance, it was refused the contract; and (4) Defendant awarded the contract to a member of an unprotected class. *Davis v. Am. Soc. of Civil Engineers*, 330 F.Supp.2d 647, 654-655 (E.D.Va. 2004) (*citing McDonnell Douglas*, 411 U.S. at 802). Plaintiff's burden in establishing a *prima facie* case is "not onerous." *Burdine*, 450 U.S. 248 at 253.

If the facts as alleged by Plaintiff are true, it can make out a *prima facie* case of discrimination under *McDonnell Douglas*. First, Plaintiff is a closely held African-American owned corporate entity, thus it may be considered as belonging to a racial minority group. Second, Plaintiff was qualified to provide comprehensive MRI services, as evidenced by the fact that it was, in fact,

---

⁴(...continued)
constitutional claims for racial discrimination. *See Howard Sec. Serv., Inc. v. Johns Hopkins Hosp.*, 516 F.Supp. 508, 513 (D.Md. 1981) ("Howard is a close corporation, apparently wholly owned by Blanheim [, an African-American man,] and operated by him as owner. To deal with Howard is, practically speaking, to deal with Blanheim. Under these limited circumstances, Howard has a cause of action under § 1981") (footnotes omitted). *See also J.A. Croson Co. v. City of Richmond*, 822 F.2d 1355 (4th Cir. 1987); *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702 (2nd Cir. 1982); *Bank Realty, Inc. v. Practical Mgmt. Tech., Inc.*, 1990 WL 82666, *3 (D.Md. 1990)("[I]t is apparent that a corporation may have standing to pursue an action for a civil rights violation"), *rev'd on other grounds*, 935 F.2d 267 (4th Cir. 1991).

providing both inpatient and outpatient MRI services prior to the
contract between Dimensions and Alliance Imaging.  Third, although
Plaintiff entered into a contract to provide inpatient MRI services
it was denied the contract to perform outpatient services, despite
its qualifications.  There is a factual issue with the fourth
requirement for establishing a *prima facie* case: Defendant awarded
the contract to Alliance Imaging, but there is no evidence on the
record as to the racial composition of Alliance Imaging's
ownership.  Plaintiff asserts in its complaint that Alliance
Imaging's owners' racial identities fall "outside of Plaintiff's
protected class." (Paper 1.)  But in deposition testimony, Dr.
Thomas acknowledges that she is unaware of the racial composition
of the ownership of Alliance Imaging:

> Q: . . . The racial composition of Alliance
> Imaging, are you familiar with the structure,
> leadership structure as to whether or not
> they're minority-owned?
> A: No.
> Q: No as in you're not aware, or no that
> they're not minority-owned?
> A: They're not minority-owned.
> Q: Do you know what is the racial composition
> of the ownership of Alliance Imaging?
> A: No.
> Q: How is it that you know they're not
> minority-owned?
> A: Well, they're a large, large corporation .
> . . .

(Paper 20, Ex. A, Thomas dep. at 155.)  This factual question is
immaterial because, as discussed below, Plaintiff cannot show that
Defendant's stated reason for awarding the contract to Alliance
Imaging is merely pretextual.  Thus, the court will momentarily

assume that Alliance Imaging is not a minority owned company and therefore Defendant awarded the MRI services contract to a member of an unprotected class.

Assuming, *arguendo*, that Plaintiff met its first burden under *McDonnell Douglas* and successfully pled a *prima facie* case, Plaintiff fails to satisfy its second burden of showing that Defendant's nondiscriminatory reason for not awarding Capitol Radiology the MRI services contract was merely a pretext for its discriminatory conduct.

Defendant responds to Plaintiff's showing of a *prima facie* case by producing evidence that it acted with a legitimate, nondiscriminatory reason, namely that the company to whom it awarded the MRI services contract charged less than Plaintiff. Defendant provided evidence that, prior to awarding the contract to Alliance Imaging, it told Dr. Thomas "that the Hospital could not afford her proposal, especially in comparison to the financial terms offered by Alliance." (Paper 20, Ex. C at 2.) Plaintiff acknowledges that it was repeatedly advised of the paramount importance of cost in the Hospital's determination of the contract award: "Q: 'Is it fair to state that price was a consideration on their part?' A: 'Absolutely.  It was probably the primary [consideration] . . . '"  and "Every opportunity that there was discussions [sic], price was a major consideration." (Paper 20, Ex. A at 102.)

17

Plaintiff must rebut Defendant's proffered nondiscriminatory reason through a preponderance of the evidence in order to defeat Defendant's summary judgment motion. Plaintiff asserts that Defendant's stated financial reason is merely pretextual because of the "lack of a formalized process, lack of the opportunity to get certain information which was requested, [and] the lack of ability for the company that was awarded the contract to be able to provide the same level of services that [Capitol Radiology] could have provided." (Paper 22, Ex. 3 at 13.) In determining whether Plaintiff has met its burden under *McDonnell Douglas*, the court should not decide whether Defendant's actions "were objectively correct or the best personnel practices, but whether the actions taken were the product of a discriminatory motive." *Jones v. Liberty Med. Ctr.*, 1992 WL 533060, *9 (D.Md. 1992) (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). "Law does not blindly ascribe to race all personal conflicts between individuals of different races . . . . Instead, legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination." *Hawkins*, 203 F.3d at 282.

Plaintiff has not met its burden of producing evidence that Defendant's reason was mere pretext and that race based discrimination was the real reason for awarding the MRI services contract to Alliance Imaging. In fact, Plaintiff has not produced *any* evidence that race, rather than economics, was a factor in

Defendant's decision-making process, thus Defendant's motion for summary judgment will be granted.

## IV.  Conclusion

Plaintiff's motion for extension of time to complete discovery, its motion for relief pursuant to Rule 56(f), and its motion to supplement will be denied.  Defendant's motion for summary judgment will be granted.  All remaining motions will be denied as moot.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
