IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND

CAPITOL RADIOLOGY, LLC            :
                                  :
     v.                           : Civil Action No. DKC 2005-3298
                                  :
DIMENSIONS HEALTH CORP.           :
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this race discrimination case is a motion for attorney's fees by Defendant Dimensions Health Care Corporation pursuant to 42 U.S.C. § 1988(b), Fed.R.Civ.P. 54(d)(2), and Local Rule 109.2. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will award attorney's fees in the amount of $28,614.

**I. Background**

Plaintiff Capitol Radiology, LLC, filed a complaint against Defendant Dimensions Health Corporation on December 9, 2005, alleging violations of the Federal Civil Rights Act of 1866, 42 U.S.C. § 1981. Capitol Radiology is a closely held limited liability corporation whose only two principals are African-American.

Plaintiff's complaint alleged generally that Plaintiff was denied the opportunity to bid on a contract for radiology services and that the contract was awarded to another company, outside

Plaintiff's protected class, Alliance Imaging.  (Paper 43, at 2). During discovery and in the motion papers, Plaintiff's claim developed into one that alleged Defendant acted in a racially discriminatory manner when it failed to award Plaintiff a contract to provide outpatient MRI (magnetic resonance imaging) services at Laurel Regional Hospital.  (*Id.*).  On September 25, 2006, this court entered an Order granting Defendant's motion for summary judgment and denying a number of discovery-related motions. (Paper 43).

The accompanying Memorandum Opinion set out the test for a *prima facie* case of racial discrimination.[1]  The court noted that there was a factual issue with the fourth requirement for establishing a *prima facie* case because there was no evidence as to the racial composition of Alliance Imaging's ownership. (Paper 42, at 16).  The court assumed for the sake of argument that Alliance Imaging was "not a minority owned company and therefore Defendant awarded the MRI services contract to a member of an unprotected class."  The court did not, as Plaintiff suggests, find that Plaintiff had established the necessary elements of a *prima facie* case of racial discrimination.  (Paper 48, at 5).

---

[1] Plaintiff was required to show that (1) it belonged to a racial minority; (2) it was qualified to provide outpatient MRI services; (3) despite its qualifications and performance, it was refused the contract; and (4) Defendant awarded the contract to a member of an unprotected class. *Davis v. Am. Soc. of Civil Engineers*, 330 F.Supp.2d 647, 654-655 (E.D.Va. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Defendant's motion for summary judgment was ultimately granted because:

> Plaintiff has not met its burden of producing evidence that Defendant's reason was mere pretext and that race based discrimination was the real reason for awarding the MRI services contract to Alliance Imaging.  In fact, Plaintiff has not produced *any* evidence that race, rather than economics, was a factor in Defendant's decision-making process. . . .

(Paper 42, at 18-19) (emphasis in original).

Defendant timely filed a bill of costs on October 2, 2006, (paper 44), and moved for attorney's fees in the amount of $72,789.00, (paper 46, Ex. A).  Plaintiff opposes the motion. (Paper 48).

**II. Analysis**

Maryland follows the American Rule which provides that each party must bear its own attorney's fees and costs, absent explicit Congressional authorization to the contrary. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 269 (1975). Nevertheless, in certain circumstances, a prevailing defendant is entitled to recover reasonable attorney's fees and costs when a plaintiff continues to pursue unsupported claims. *Davis v. Target Stores Div. of Dayton Hudson Corp.*, 87 F.Supp.2d 492, 494 (D.Md. 2000).

As amended, 42 U.S.C. § 1988(b) provides that a district court, in its discretion, may award the prevailing party a reasonable attorney's fee as part of the costs. Section 1988(b) is part of the Congressional scheme to promote enforcement of

3

constitutional and civil rights law by private parties. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *see also Christiansburg Garment Co. v. Equal Empl. Opp. Comm'n.*, 434 U.S. 412, 418 (1978) (setting standard for attorney's fees awards to defendants in actions under Title VII of the Civil Rights Act of 1964). When awarding attorney's fees under a civil rights statute, "prevailing defendants are to be treated differently from prevailing plaintiffs, even though the statutory language is neutral." *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 606 (4th Cir. 1997). As the Supreme Court explained, "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote vigorous enforcement. . . ." *Id.* at 422. Congress specifically intended the attorney's fees provision to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Id.* at 420. A second factor cited by the Supreme Court as discouraging fee awards to defendants in civil rights suits is the fact that an attorney's fee award to a prevailing plaintiff is an award "against a violator of federal law." *Id.* at 418.

The absence of these factors when a defendant prevails in such cases dictates that an award of attorney's fees to a defendant must be based on the "quite different equitable considerations" of

4

discouraging groundless lawsuits. *Id.* at 419-20. Hence, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith[,]" or if he continued litigation after it clearly became frivolous, unreasonable, or groundless. *Id.* at 421-22. *See also DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999).

In determining whether a plaintiff's claim was frivolous, the court should not "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-422. Similarly, while a grant of summary judgment in defendant's favor is a minimum requirement for an award of attorney's fees against plaintiff, it cannot be the sole basis for such an award. *See Colbert v. Yadkin Valley Tel. Membership Corp.*, 960 F.Supp. 84, 86 (M.D.N.C. 1997). A district court should analyze carefully the plaintiff's legal claim, the evidence adduced in support of that claim, and when the plaintiff should have realized that the claim was groundless. *Hutchinson v. Staton*, 994 F.2d 1076, 1079 (4th Cir. 1993). The United States Court of Appeals for the Fourth Circuit has instructed district courts to strike a careful balance between not chilling civil rights claims and protecting the judicial process from abuse. *Blue v. United States Dept. of the Army*, 914 F.2d 525, 535 (4th Cir. 1990).

5

In light of the policy considerations outlined above, the court concludes that, while Plaintiff's complaint arguably was not frivolous on its face, it clearly morphed into frivolous litigation by the time Defendant's motion for summary judgment was filed on May 15, 2006. Defendant's motion for summary judgment relied heavily on Dr. Thomas's deposition testimony in which she essentially admitted the futility of Plaintiff's claims of discrimination. Plaintiff's continued litigation after this point was groundless and without foundation. *See Christiansburg*, 434 U.S. at 421-422. Plaintiff first claimed that it was denied and/or not offered an opportunity to submit a proposal. (Paper 1, ¶¶ 7-9, 16). This contention was squarely contradicted by Dr. Thomas's deposition testimony that Plaintiff had submitted a proposal and was, in fact, awarded a radiology services contract in mid-January 2005, signed in March 2005. (Paper 20, Ex. A, Thomas Dep., at 59). Plaintiff's allegation of discrimination evolved to contend that it was discriminated against because it was not awarded a separate, subsequent contract to perform outpatient MRI services. In her deposition, Dr. Thomas admitted that price was the primary consideration in Defendant's decision to award the outpatient MRI services contract to Alliance Imaging over Capitol Radiology. (*Id*. at 102). This concession directly contradicted Plaintiff's burden to show that Defendant's stated reason, financial considerations, was merely pretextual. Thus, Dr. Thomas's

6

deposition testimony defeated both of Plaintiff's claims of discrimination. Defendant clearly pointed out the lack of foundation for this suit in its motion for summary judgment. Continued litigation beyond this point was frivolous. Because the filing of Defendant's motion for summary judgment marks the boundary at which time the litigation became frivolous, the court will not award fees for any attorney time spent prior to May 15, 2006.

After May 15, 2006, Defendant was required to file an opposition to a second motion for extension of time, a surreply to the second motion for extension of time, a reply to Plaintiff's opposition to the motion for summary judgment, an opposition to the motion to amend/correct Plaintiff's responses to Defendant's requests for admissions, a motion to strike Plaintiff's reply, a reply to Plaintiff's response to motion to strike, and a response to a motion for leave to file a supplement to Plaintiff's opposition to Defendant's motion for summary judgment.

The amount of the fee award lies within the discretion of the court and it must represent a reasonable fee for the work done. Plaintiff's opposition does not address, at all, the amount of the fee request, thus waiving any objection to the hours or rates requested. The court has nevertheless reviewed the fees requested and concludes that the hours are reasonable for the tasks involved and a slight modification in the hourly rates is appropriate.

7

To calculate an award of attorney's fees, the court generally should determine "a 'lodestar' figure by multiplying the number of reasonable hours expended times a reasonable rate."  *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir. 1986), *remanded sub nom. to Starnes v. Hill*, 635 F.Supp. 1270 (W.D.N.C. 1986)).  The court may adjust this figure upward or downward to accommodate a plaintiff's financial condition,[2] his motive in bringing the lawsuit, and the frivolousness of the case.  *See Davis*, 87 F.Supp.2d at 496.  A defendant should take every measure to protect its costs from becoming exorbitantly high.  The reasonable hourly rate is based on the prevailing market rate commanded by lawyers of similar skill, experience, and reputation in the relevant community.  *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F.Supp.2d 751, 767 (D.Md. 2001).  Appendix B to the Local Rules suggests a guideline range for hourly rates based on the number of years an attorney has been admitted to the Bar.  Defendant calculated its lodestar figure using the high end of the range for several attorneys.

Defendant asked for attorney's fees of $72,789.00, based on the following calculations:

---

[2] Plaintiff is a corporation with ongoing contracts with Defendant.  No financial information has been presented indicating that it is not capable of paying an appropriate attorney's fee and the costs in this case.

| *Attorney* | *Skill Level* | *Hours* | *Hourly Rate* | *Total* |
|---|---|---|---|---|
| Pamela White | Shareholder | 32.4 | $275 | $8,910 |
| Steven Smith | unknown[3] | 4.4 | $275 | $1,210 |
| Neil Duke | Senior Associate | 236.2 | $225 | $53,145 |
| Stacy Radz | Mid-level Associate | 52.0 | $170 | $8,840 |
| Stephan Leikach | Paralegal | 4.6 | $90 | $414 |
| Patricia Banister | Paralegal | 3.0 | $90 | $270 |

(Paper 46, White Aff. & Ex. A).

The burden is on the fee applicant to substantiate the hours worked and the rates claimed. *Xiao-Yue Gu*, 127 F.Supp.2d at 767. Defendant submitted the required affidavit and daily time logs. (*See* Paper 46, White Aff. & Att. A).

Based on Ms. White's education and experience, as described in the affidavit, $275 per hour is a reasonable rate. The affidavit supplies no information as to Mr. Smith's level of skill and experience. Mr. Smith's work after May 15, 2006, is limited to reviewing the motion for summary judgment after it had already been filed and reviewing reports from Ms. White and Mr. Duke, for a total of 1.4 hours. Because Defendant has not substantiated Mr. Smith's billing rate and the work he performed was "redundant, or

---

[3] A designation of "unknown" means that the attached affidavit does not include information pertaining to the attorney's skill and experience. Nor does the affidavit include the attorney's customary fee as required by Local Rule 109.2.b. (*See* Paper 46, White Aff.).

9

otherwise unnecessary" it may not recover fees for his time. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The affidavit provides Mr. Duke's and Ms. Radz's positions within the firm and indicates that Defendant is requesting rates below these attorneys' customary billing rates of $260 per hour and $220 per hour, respectively. (Paper 46, White Aff.). The affidavit does not state, however, how long Mr. Duke or Ms. Radz has been practicing law or give any other indication of his or her level of skill and experience. In its unsworn memorandum, Defendant states that Mr. Duke graduated from the University of Baltimore School of Law in 1998 and Ms. Radz graduated from Fordham University School of Law in 2001. (Paper 46, at 7 n.13). Because Defendant has provided some evidence of the skill and experience of these attorneys, but omitted other pertinent information, a slight reduction in their hourly rates is appropriate. Mr. Duke's time will be billed at a rate of $200 per hour and Ms. Radz's time will be billed at a rate of $150 per hour. Defendant will be allowed to recover the full amount of fees requested for Mr. Leikach's work, as some paralegal time is expected in any litigation. Ms. Banister did not bill any time after May 15, 2006.

### III. Conclusion

Based on a careful review of the daily time logs submitted, the court will award attorney's fees in the amount of $28,614. The award was calculated as follows:

10

| *Attorney* | *Skill Level* | *Hours* | *Hourly Rate* | *Total* |
|---|---|---|---|---|
| Pamela White | Shareholder | 9 | $275 | $2,475 |
| Neil Duke | Senior Associate | 125.7 | $200 | $25,140 |
| Stacy Radz | Mid-level Associate | 3.9 | $150 | $585 |
| Stephan Leikach | Paralegal | 4.6 | $90 | $414 |

Defendant also submitted a separate bill of costs on October 2, 2006, pursuant to Local Rule 109.1.a. (Papers 44 & 45). Fed.R.Civ.P. 54(d)(1) provides that: "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" The court will therefore refer the bill of costs to the clerk of the court for disposition. A separate Order will follow.

                                  _____/s/_____
                                  DEBORAH K. CHASANOW
                                  United States District Judge